UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LABRITTANY K. HASSEN** | * | **CIVIL ACTION NO. 17-00750** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **RUSTON LOUISIANA HOSPITAL CO., LLC d/b/a NORTHERN LOUISIANA MEDICAL CENTER** | * | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 17] filed by Defendant Ruston Louisiana Hospital Co., LLC d/b/a Northern Louisiana Medical Center ("NLMC"). NLMC moves for summary judgment on Plaintiff LaBrittany K. Hassen's ("Hassen") race discrimination claim. Hassen opposes summary judgment. [Doc. No. 24]. NLMC filed a reply memorandum. [Doc. No. 27].

For the following reasons, NLMC's Motion for Summary Judgment is GRANTED.

**I.     FACTS**

Hassen is a registered nurse who was formerly employed by NLMC. She has been a nurse since approximately 2009.

NLMC has an online application system. Open positions are listed on the system and assigned a requisition number. An individual who seeks employment with NLMC applies on line for an open position, and the acquisition number for the open position is also listed on the individual's employment application.

Hassen applied for an open PRN Emergency Room registered nurse position through NLMC's online application system. According to the records of the Human Resources

Department, the position for which she applied was assigned requisition number 1202126,[1] and this same requisition number was listed on her employment application. NLMC's Human Resources Director, Tonya Duggan ("Duggan"), provided an affidavit authenticating the employment records, averring that Hassen applied for a PRN position, and averring to the general application process. [Doc. No. 17-3, Exh. 1, Duggan Aff. & NLMC records].

However, Hassen has also produced an online application which appears to show that she also applied for a full-time Emergency Room registered nurse position assigned requisition number 1118911. While that position was not included in the Human Resources records provided to the Court and averred to by Duggan, NLMC (at least for purposes of summary judgment) does not appear to dispute this factual contention. In this separate application, Hassen applied for a full-time position, but lists her availability for employment as full-time, part-time, or PRN. [Doc. No. 24, Exh. A].

The Director of the Emergency Room, Sandy Goss ("Goss"), interviewed Hassen and hired her as a PRN Emergency Room registered nurse. During the interview, Hassen and Goss did not discuss the type of position for which she was applying or if there were full-time positions available. Hassen was employed by NLMC as a PRN Emergency Room registered nurse from February 13, 2012, to June 22, 2012. She was provided a PRN contract clearly indicating the type of employment for which she was hired.

During the time of Hassen's employment, a current PRN who sought to obtain a full-time position (or a current full-time employee who sought a PRN position) was required to complete

---

[1] NLMC lists the requisition number as "120216" in its memorandum and the affidavit of Tonya Duggan, but the accompanying documentation clearly shows that this is a typographical error, and the correct requisition number was 1202126. [Doc. No. 17-1, p. 1; Cf. Doc. No. 17-3, Exh. 1, Duggan Aff., ¶ 7 & Doc. No. 17-3, pp. 6 & 12].

an online application for an available position. After being hired PRN, Hassen never completed an online application for a full-time nurse position.

In June 2012, Hassen informed NLMC that she had obtained a full-time position at Grambling State University as a student health nurse working Monday through Friday from 7:30 a.m. to 5:00 p.m. There is no prohibition against anyone working a separate full-time job and PRN for NLMC. However, at that time, the available PRN positions were twelve-hour shifts on weekdays. Goss did not believe that these available shifts would fit with Hassen's full-time position, so effective June 22, 2012, Goss "purged" Hassen from NLMC's employment system as unable to fulfill her PRN obligation.[2] [Doc. No. 17-7, Goss Depo., Exh. 3, pp. 13-14]. Hassen has been eligible for re-hire since that time, but has not completed an online application for any positions through NLMC's online application system.

Hassen alleges that NLMC denied her a full-time registered nurse position because of her race, Black. She points to two comparators hired the same day she was: Marny Young Wheeler ("Wheeler") and Megan Talton ("Talton"), both of whom are White and both of whom, according to Hassen, had less experience. Wheeler, a recent nursing school graduate, applied for an open full-time Emergency Room registered nurse position through NLMC's online application system. The position for which she applied was assigned requisition number 1118909, and this same requisition number was listed on her employment application. NLMC hired Wheeler as a full-time Emergency Room registered nurse. She was employed by NLMC from February 13, 2012 to November 1, 2014, as a full-time Emergency Room registered nurse.

---

[2]Goss explained that Hassen worked twelve-hour shifts as a PRN registered nurse, and Goss needed "several shifts filled during the week." If Hassen was "working elsewhere 9:00 to 5:00, she would not be able to fulfill [the] 12-hour shifts that [Goss] needed [filled]." [Doc. No. 17-7, Goss Depo., Exh. 3, p. 14]. In other words, Goss did not believe that Hassen would be available to work her full-time position from 9:00 a.m. to 5:00 p.m. and then work a shift that same day from, for example, 7:00 p.m. to 7:00 a.m.

On October 16, 2014, Wheeler completed an online application for a new available PRN registered nurse position. She was then employed from November 2, 2014, to August 9, 2016, as a PRN Emergency Room registered nurse. Wheeler has since moved, resigning from NLMC effective August 9, 2016. She is considered eligible for re-hire.

Talton, a former paramedic and recent nursing school graduate, applied for a full-time Emergency Room registered nurse position through NLMC's online application system. The position for which she applied was assigned requisition number 1201862, and this same requisition number was listed on her employment application. NLMC hired Talton as a full-time Emergency Room registered nurse, and she was employed by NLMC from February 13, 2012, to November 11, 2013. Talton was considered resigned from NLMC effective November 11, 2013, after she was a "no call, no show" on two occasions. She is not eligible for re-hire.

Goss makes the hiring decisions for nurses in the Emergency Room at NLMC and did so during the relevant time period. Goss testified that she hired Hassen PRN, while hiring Wheeler and Talton for full-time positions, because the two comparators applied for full-time positions, and Hassen applied for a PRN position. [Doc. No. 17-7, Goss Depo., Exh. 3, p. 9]. The supporting documentation from NLMC supports Goss' testimony.

Although Hassen alleged that she was the only Black registered nurse on staff at NLMC, there were at least five (5) Black nurses were hired and employed by NLMC during the time of Hassen's employment.

If a former employee is considered eligible for re-hire, he or she may complete an online application for an available position. Hassen has not done so since she took a full-time position with Grambling State University.

Hassen timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which found "reasonable cause to believe" that a violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, occurred, but was unable to settle the matter with NLMC. [Doc. No. 1-2]. Accordingly, on March 20, 2017, the EEOC closed its investigation and issued a notice of right to sue letter to Hassen.

On June 9, 2017, Hassen filed a Complaint in this Court against NLMC alleging race discrimination under Title VII.

On April 26, 2018, NLMC filed the instant Motion for Summary Judgment, moving for dismissal of all Hassen's claims. [Doc. No. 17]. Pursuant to an extension from the Court, on June 16, 2018, Hassen timely filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 24]. On July 3, 2018, NLMC timely filed a Reply Memorandum [Doc. No. 27] in support of its Motion for Summary Judgment.

The Court is now prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact

is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

**B.     Race Discrimination**

Hassen alleges that NLMC discriminated against her on the basis of race by failing to hire her as a full-time Emergency Room registered nurse and by purging her from its system when she obtained new employment. NLMC argues that Hassen has failed to establish a prima facie case of discrimination, and, that, even if she has, she has failed to show that its legitimate, non-discriminatory reasons are pretextual.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Hiring and termination are obviously terms and conditions of employment.

When there is no direct evidence of race discrimination, as in this case, the Court applies the burden shifting test established by *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973). Under the *McDonnell Douglas* method, a plaintiff must first establish a prima facie case

of discrimination with allegations and proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *See Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris Cty.*, 197 F.3d 173, 184 (5th Cir. 1999). With regard to the fourth element, a plaintiff must show that the "'other similarly situated employees who were not members of the protected class'" were treated more favorably "'under nearly identical circumstances.'" *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (quoting *Lee*, 574 F.3d at 259); *see also Morris v. Town of Independence*, 827 F.3d 396, 401(5th Cir. 2016). In other words, the plaintiff's conduct drawing "'the adverse employment decision'" must have been "'nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.'" *Paske*, 785 F.3d at 985 (quoting *Lee*, 574 F.3d at 260) (additional internal quotation marks and citations omitted).

If Hassen establishes a *prima facie* case of discrimination, the burden shifts to NLMC to articulate legitimate, non-discriminatory reasons for the adverse actions against her. *See Lee*, 574 F.3d at 259. If NLMC satisfies this burden of production, the burden shifts back to Hassen, who must "offer sufficient evidence to create a genuine issue of material fact "either (1) that [NLMC's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [NLMC's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Hassen's] protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case). In this case, Hassen seeks to show that she has met her prima facie burden and that

7

NLMC's purported reasons for failing to hire her as a full-time Registered Nurse and for purging her from its system are pretext for race discrimination.

### 1. *Prima facie* Case.

It is undisputed that Hassen falls within a protected class as a Black employee and former employee and that she was (and is) qualified for a full-time (or PRN) Registered Nurse position. However, NLMC argues that Hassen cannot make out the third and fourth elements because she did not suffer an adverse employment action, and she was not treated less favorably than other similarly situated employees outside her protected group.

With regard to the third element, NLMC initially contended that Hassen did not suffer an adverse employment action because she never submitted an online application for a full-time position. Additionally, NLMC argued that she was not terminated, but left to pursue other employment and remains eligible for re-hire.

With regard to the fourth element, NLMC initially contended that Hassen cannot show that she was treated less favorably than those outside the protected class because her two White comparators submitted applications for available full-time positions, and Hassen did not. Further, NLMC contends that Hassen has not produced any evidence to show that persons outside her protected class remained employed as a PRN Registered Nurse in the Emergency Room after taking a full-time day position. The only comparators Hassen names, Wheeler and Talton, left their employment under dissimilar circumstances.

Hassen argues in response that "she suffered an adverse employment action when she was hired as PRN while 2 white applicants with lesser credentials were hired full time," she was "never considered for a full time position after hire," and she was terminated "after she obtained a full time job elsewhere." [Doc. No. 24, pp. 2-3]. In support of her failure-to-hire claim,

Hassen produced a printout which appears to show that she did, in fact, apply for a full-time Emergency Room registered nurse position.

If, as NLMC initially contended, Hassen failed to apply for a full-time position, then she could not meet her *prima facie* burden of showing that she was subjected to an adverse employment action. However, she raised a genuine issue of material fact for trial she did in fact apply for a full-time position and was not apparently interviewed or selected for the position. Accordingly, given the minimal burden placed on plaintiffs, the Court finds that Hassen has raised a genuine issue of material fact as this element of her prima facie case on her claim that NLMC failed to hire her for a full-time position.

Further, given the Court's finding on the third element and NLMC's lack of further argument as to the fourth element, the Court finds that Hassen has also raised a genuine issue of material fact whether she was treated differently from her White comparators. Viewing the evidence in the light most favorable to her, Hassen has shown that she applied for a full-time position, but she was not interviewed or hired for a full-time position when two White applicants with less experience were interviewed and hired for full-time positions.

In contrast, the Court finds that Hassen has failed to raise a genuine issue of material fact for trial to show that she was subjected to an adverse employment action when Goss "purged" her from the NLMC employment roll. If Goss had unilaterally purged Hassen from the roll when she was qualified, ready, and available to work the shifts for which she had been hired, then, undoubtedly, such an action would constitute termination. However, in this case, the precipitating event was not Goss' action, but Hassen's. Hassen informed NLMC that she had obtained full-time employment during the week, and only then did Goss purge her as unable to meet the obligations of twelve-hour shifts during the work week.

Additionally, Hassen has failed to raise a genuine issue of material fact for trial that NLMC treated her differently from White comparators in nearly identical situations when Goss purged her from the employment rolls. She has not pointed to any comparators who meet this criteria.

For these reasons, the Court finds that Hassen established a *prima facie* case of race discrimination based on NLMC's failure to hire her for a full-time position, but has not established a *prima facie* case based on its purging of her from its employment roll.

### 2. Pretext

The Court having found that Hassen has established a *prima facie* case of discrimination on her failure-to-hire claim and even assuming *arguendo* that she had done so on her termination/purging claim, NLMC argues that it is still entitled to summary judgment. NLMC contends that, for the reasons articulated, it has also met its burden of production, and Hassen has failed to show that its reasons are pretext for discrimination.

The Court agrees.

While Hassen has now produced evidence that she did submit an application for a full-time Emergency Room registered nurse position online, she has not disputed the other record evidence and Goss' testimony. Regardless of the two applications, Goss interviewed her for a PRN position, it is undisputed that she and Hassen never discussed the type of position in the interview, Hassen was given a contract for a PRN position, and Hassen never questioned Goss or Human Resources why she was hired for a PRN position. Although Hassen contends that she was always interested in a full-time position, she never applied for an available full-time Registered Nurse position online after she obtained a PRN position.

Moreover, Hassen has not produced any other evidence to show that NLMC was racially

discriminatory in the way it handled the placement of nurses in positions. For example, Hassen produced no evidence that NLMC informed White nurses, but not Black nurses of available positions, or that NLMC has hired White nurses, but not Black nurses, without an online application. She merely contends that she had more experience than other White full-time Emergency Room nurses, and she should have been given a full-time position if one became available. Neither NLMC, nor any other employer, is required to intuit Hassen's desire for full-time employment when a non-discriminatory application process is available, she was aware of the process, and she did not further avail herself of the process.

Likewise, even if Goss' purging of Hassen from the employment roll constituted termination within the meaning of Title VII, Hassen has failed to show NLMC's reasons for purging her are pretextual. While the Court may not engage in credibility determinations in ruling on a motion for summary judgment, the Court does not give up common sense in applying the law. Goss' explanation that she did not believe Hassen could work 12-hour shifts after she was hired to work a full-time day job five days per week is common sense. No one would expect, or want, a healthcare professional to regularly work at least an 8-hour shift at a day job, take a short break, and then work another overnight 12-hour shift, only to get up and work another 8-hour day job. Further, Goss testified, and Hassen has produced no evidence to dispute her testimony, that she needed day-shift nurses at the time. Finally, NLMC has produced undisputed evidence that it commonly purges persons, White and Black, from its employment rolls when they find full-time employment elsewhere. [Doc. No. 17-6, Exhibit to Goss Depo., p. 9, NLMC-0001, titled "RN Hires"].

Hassen disputes NLMC's evidence, pointing out that she sometimes only worked half-shifts and that a number of PRN registered nurses did not work during a month, but remained on the schedule. However, this evidence, even viewed in the light most favorable to Hassen, shows

only that, on occasion, she did not have to work a full shift, not that NLMC's reason for purging her from its rolls was pretextual. Her remaining evidence does not raise a genuine issue of material fact for trial because she has failed to show that these other employees were in "nearly identical circumstances" as she was, i.e, that other PRN registered nurses who had obtained full-time employment remained on the NLMC employment roll and did not work at all some months.[3]

Additionally, Hassen has produced no other evidence of race discrimination. She does not recount any conversations or comments made by Goss or anyone in the Emergency Room that would support her belief that she was subjected to race discrimination. Contrary to her allegation that she was the "sole black registered nurse on staff" [Doc. No. 1], NLMC produced undisputed evidence that there were at least five (5) Black registered nurses, other than Hassen, who were hired and employed during the period of January 2012 through June 2012. [Doc. No. 17-1, Duggan Aff., Exh. 1, ¶ 24 and Exhibit 1-D to Duggan Aff.].

Under these circumstances, even if Hassen has or could establish a *prima facie* case of discrimination, NLMC has produced legitimate, non-discriminatory reasons for the complained-of actions, and Hassen has failed to raise a genuine issue of material fact for trial that these reasons are pretext for discrimination.

## III.  CONCLUSION

For the foregoing reasons, NLMC's Motion for Summary Judgment is GRANTED, and

---

[3] The fact that it was not "mandatory" [Doc. No. 24, p. 5] for Goss to purge Hassen from NLMC's roll, without more, does not raise a genuine issue of material fact whether such action was pretextual.

Hassen's lawsuit is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 6th day of July, 2018.

  **TERRY A. DOUGHTY**
  **UNITED STATES DISTRICT JUDGE**